## COMMONWEALTH vs. CARLOS GARCIA.

Essex. October 7, 1986. — December 17, 1986.

Present: GREANEY, C.J., QUIRICO, & GRANT, JJ.

*Search and Seizure,* Warrant, Nighttime search. *Alien. Practice, Criminal,*
Waiver of trial by jury, Plea, Admission to sufficient facts to warrant
finding. *Words,* "Nighttime," "Night."

Discussion of the history of statutory provisions with respect to search war-
rants as relating to authorization of nighttime searches. [260-261]
On appeal from the denial of a motion to suppress narcotic drugs seized pur-
suant to a search warrant, it was held that lack of a showing to or finding
by the magistrate of cause to justify issuance of a nighttime search
warrant did not invalidate the warrant; that the issuing magistrate's
failure to strike from the warrant the words "in the daytime" did not
indicate that the magistrate had failed to exercise his discretion on the
question whether he should authorize a nighttime search; and that the
search, commenced after dark at approximately six o'clock on a
November evening, was reasonable and, in any event, the defendant
did not show prejudice resulting from the time at which it was conducted.
[261-264]
Neither the provisions of Mass.R.Crim.P. 12(c) nor those of G. L. c. 278,
§ 29D, respecting procedures for acceptance of guilty pleas, applied to
a narcotics case in which the defendant's waiver of a jury trial was
followed by a colloquy between court and counsel concluding with the
judge's finding the defendant guilty of the offenses charged, where it
was clear on the record that the defendant had not in effect pleaded
guilty, but had merely been convicted in circumstances that would pre-
serve his right to appellate review of the denial of his motion to suppress.
[264-267]

INDICTMENTS found and returned in the Superior Court De-
partment on November 16, 1983.

A motion to suppress evidence was heard by *Alan J. Dimond,*
J., and the case was heard by *James D. McDaniel, Jr.,* J.

*Patricia A. O'Neill,* Committee for Public Counsel Services,
for the defendant.

*Elin H. Graydon,* Assistant District Attorney, for the Com-
monwealth.

GRANT, J. The defendant has appealed from Superior Court convictions of possession of Class A (heroin) and Class B (cocaine) controlled substances with intent to distribute them. G. L. c. 94C, §§ 32 and 32A, respectively. Two questions have been argued.

1. The heroin and cocaine which gave rise to the prosecutions were discovered and seized by the police in the course of executing a warrant to search the defendant's apartment in Lynn. The State police officer who headed up the search team had met with his informant during the morning of November 2, 1983, and had secured the warrant later that day from an assistant clerk of a District Court. The search commenced at approximately 6:00 P.M. the same day. Substantial quantities of heroin and cocaine were discovered, as well as various paraphernalia which could be used in cutting and distributing both substances. The defendant moved to suppress the evidence seized on the ground that so much of the warrant as purported to authorize a search in the nighttime was invalid.[1] The motion was denied after hearing.

We start with a brief discussion of the history of the statutory provisions with respect to search warrants which are now found in G. L. c. 276, §§ 2 (as appearing in St. 1964, c. 557, § 2), 2A (inserted by St. 1964, c. 557, § 3) and 2B (as amended by 1965, c. 384). Nighttime searches have been expressly authorized ever since 1836. See Rev. Sts. c. 142, § 4 (1836); Gen. Sts. c. 170, § 4 (1860); Pub. Sts. c. 212, § 4 (1882); St. 1899, c. 166; R.L. c. 217, § 2 (1902); St. 1919, c. 179, § 3; G. L. c. 276, § 2 (1921); St. 1959, c. 313, § 19; St. 1963, c. 96, § 2; St. 1964, c. 557, § 2. There has never been a requirement that an application for a warrant set out the reasons for the officer's wishing to search in the nighttime, nor any requirement that the issuing magistrate set out on the face of

---

[1] An additional ground for suppression has been rendered immaterial by the findings of fact made by the motion judge. There has never been any challenge to the sufficiency of the facts recited in the application for the warrant to support a finding of probable cause to believe that both substances would be found in the apartment. See generally *Commonwealth* v. *Upton*, 394 Mass. 363, 365-377 (1985).

the warrant his reasons for authorizing a search to be made in the nighttime. An earlier requirement that there be "satisfactory evidence" in order to authorize a nighttime search was deleted in the transition from Pub. Sts. c. 212, § 4 (1882), as amended by St. 1899, c. 166, to R.L. c. 217, § 2 (1902).[2] Nor has there ever been a statutory definition of "nighttime" or "night" in any of the general statutory provisions authorizing the issuance of search warrants.

The present G. L. c. 276, § 2, authorizes the issuance of a warrant which commands the officer "to search in the daytime, or if the warrant so directs, in the nighttime." Section 2A, which prescribes the form of the warrant, commands the officer "in the daytime (or at any time of the day or night) to make an immediate search."[3] Section 2B, which prescribes the contents of the affidavit which constitutes part of the application for the warrant, is silent on the questions whether and why the applicant may be seeking authorization to search in the nighttime.[4] We have recently held that there is no particular statutory requirement applicable to an application for a nighttime warrant and no requirement that the magistrate state or identify the cause for issuing such a warrant. *Commonwealth* v. *DiStefano,* 22 Mass. App. Ct. 535, 541-543, further appellate review denied, 398 Mass. 1104 (1986). If the magistrate issues a warrant which can be executed in the nighttime, he is presumed to have had cause for doing so. *Id.* at 543.

We turn now to the various attacks which the defendant has launched on the nighttime warrant which was executed in this case.[5] He urges first that it does not appear that there was any

---

[2] The "satisfactory evidence" did not have to appear on the face of the warrant. *Wright* v. *Dressel,* 140 Mass. 147, 150 (1885).

[3] There is no statutory definition of the word "immediate." See *Commonwealth* v. *Cromer,* 365 Mass. 519, 522 (1974).

[4] This silence is to be contrasted with the explicit requirements of § 2B that the affidavit set out all the facts on which the applicant intends to rely for a finding of probable cause and that those facts warrant such a finding. See *Commonwealth* v. *Monosson,* 351 Mass. 327, 329-330 (1966); *Commonwealth* v. *Upton,* 394 Mass. at 366-369.

[5] As we read the defendant's brief, many of his arguments depend to some extent on art. 14 of the Massachusetts Declaration of Rights, which has

showing made to the magistrate of a cause which would justify his issuance of a nighttime warrant or any showing that the magistrate actually found the existence of such cause. We have already pointed out that there is no statutory requirement of any such showing or finding. There is nothing unusual about nighttime searches for narcotics (see *Commonwealth* v. *Cromer,* 365 Mass. 519, 521 [1974]; *Commonwealth* v. *Rugaber,* 369 Mass. 765, 767 [1976]), which are notoriously easy to move and destroy. See *Commonwealth* v. *Amaral,* 16 Mass. App. Ct. 230, 235 (1983). In the present case, as appears from the affidavit in support of the application for the warrant, the police were looking for Class A and Class B substances; their informant had described the defendant as one of the largest heroin smugglers and dealers in the Lynn area; and within thirty-six hours of his meeting with the police, the informant had seen more than 100 bundles of heroin and large quantities of cocaine (measured in ounces and half-ounces) in the defendant's presence and apartment. We think it clear from the *Di-Stefano* case that the existence of good cause for a nighttime search is to be presumed from the fact that the magistrate issues a warrant directing such a search. 22 Mass. App. Ct. at 543. On this point, and in a case such as the present, we think the defendant is pointing his finger in the wrong direction; he failed to introduce any evidence at the hearing on the motion to suppress that there had been no cause for a nighttime search.

The defendant's final contention with respect to the warrant is that it fails to show that the issuing magistrate exercised his discretion on the question whether he should authorize a nighttime search. This contention is grounded on nothing firmer than the magistrate's failure to strike from the face of the warrant the words "in the daytime" found in the phrase "in the daytime (or at any time of the day or night)" which is pre-

---

found new popularity as a result of the Supreme Judicial Court's decision to adhere to stricter standards for determining probable cause than those which now prevail under the Fourth Amendment to the Constitution of the United States. See *Commonwealth* v. *Upton,* 394 Mass. at 369-373.

scribed by G. L. c. 276, § 2A.[6] Inappropriate words were struck from other parts of the form, and we are not persuaded that the failure to strike the words in question reflects anything more than a clerical oversight which would not affect the validity of the warrant. Compare *Commonwealth* v. *Truax,* 397 Mass. 174, 181-182 (1986). Indeed, it is not beyond reason that those words were deliberately left in for the purpose of making it doubly clear that a nighttime search was being authorized as well as a daytime search.

Until this point, our discussion has proceeded on the assumption that the warrant in this case was executed in the "nighttime" within the meaning of G. L. c. 276, § 2, or during the "night" within the meaning of G. L. c. 276, § 2A. We have already adverted to the fact that there is no definition of the quoted words in G. L. c. 276.[7] Nor does there appear to be any judicial construction of those words for purposes of those statutory provisions. In the *DiStefano* case we noted that under § SS 220.2(3) of the Model Code of Pre-Arraignment Procedure (1975) "nighttime" does not arrive for warrant purposes until 8:00 P.M. 22 Mass. App. Ct. at 541. As the motion judge noted, under Fed.R.Crim.P. 41(h), as amended effective July 1, 1974, "nighttime" does not arrive for warrant purposes until 10:00 P.M. The absence of any definition of that word in our law and the range of possibilities just indicated suggest that it will be instructive to consider whether the search in the present case was "unreasonable" within the meaning of art. 14 of the Massachusetts Declaration of Rights.[8]

---

[6] The defendant notes that the words "strike inapplicable clauses" are printed at the foot of the warrant. Those words do not appear in the form of warrant prescribed by § 2A and have no legal effect. They cannot be taken as anything more than the gratuitous advice of some legal stationer.

[7] The motion judge relied on the provisions of G. L. c. 278, § 10, in reaching his conclusion that the search in this case was made in the nighttime. Section 10 defines "nighttime" for the purposes of the burglary statutes (see, e.g., *Commonwealth* v. *Williams,* 2 Cush. 582, 589 [1849]; *Commonwealth* v. *Kingsbury,* 378 Mass. 751, 752 [1979]) but has no application to search warrants.

[8] See note 5, *supra.*

The search was commenced after dark at approximately 6:00 P.M. on November 2, 1983. When the officers knocked, the defendant's wife was seated in the living room of the apartment reading a magazine. When the officers entered, the defendant was seated on the bed in the adjoining bedroom. According to the defendant's wife, he was watching television. According to the officer who testified at the suppression hearing, the defendant was using a notebook and a calculator. It does not appear that there was anyone else in the apartment, or that either the defendant or his wife was in a state of undress. There does not appear to have been present any of the factors which have caused some to regard nighttime searches with revulsion. See, e.g., *Gooding* v. *United States,* 416 U.S. 430, 462-463 (1974) (Marshall, J., dissenting). We are of opinion that this search cannot be declared "unreasonable" within the meaning of art. 14 of the Declaration of Rights.

If we are wrong in this, the search must still be upheld because the defendant has failed to show that he was prejudiced by the time of day at which the search was conducted. For example, it does not appear that the police discovered something incriminating which they would not have discovered if the search had been conducted the previous afternoon or the following morning. Compare *Commonwealth* v. *Cromer,* 365 Mass. at 525-526 (defendant required to show prejudice resulting from unreasonable delay in executing warrant); *Commonwealth* v. *Sheppard,* 394 Mass. 381, 389-391 (1985) (defendant not prejudiced, in the circumstances, by failure to meet particularity-of-description requirements of G. L. c. 276, § 2, and art. 14); *Commonwealth* v. *Truax,* 397 Mass. at 180-182 (failure to delete inapplicable words in application for warrant and erroneous deletion of applicable words ["there is probable cause"] on the face of the warrant); *Commonwealth* v. *Aldrich, ante* 157, 160-163 (1986) (return signed and sworn to by officer who did not participate in search).

2. When the case was called for trial before a second judge, the defendant waived his right to trial by jury in accordance with procedures which are not challenged here. See *Ciummei* v. *Commonwealth,* 378 Mass. 504, 507-511 (1979); *Common-*

*wealth* v. *Schofield,* 391 Mass. 772, 773-776 (1984). There then followed a colloquy between court and counsel which concluded with the judge's finding the defendant guilty of both the offences charged. The defendant's contention on this aspect of the case is that he is entitled to a new trial because, in effect, he pleaded guilty without having first been informed of the consequences of doing so in the manner and to the extent required by Mass.R.Crim.P. 12(c)(3), 378 Mass. 868 (1979), and without having first been given the advisement as to the possible consequences of a guilty plea on his status as an alien which is required by G. L. c. 278, § 29D, inserted by St. 1978, c. 383, whenever a defendant pleads guilty or nolo contendere.[9] See *Commonwealth* v. *Mahadeo,* 397 Mass. 314, 316-317 (1986).

The question for decision here is whether the defendant effectively stipulated to the truth of facts which constituted all the elements of the offences charged and were conclusive of guilt (see *Commonwealth* v. *Hill,* 20 Mass. App. Ct. 130, 130-131, 132 [1985]) or whether he simply stipulated that the Commonwealth's witnesses would testify in the manner asserted by the prosecutor. See *Commonwealth* v. *Triplett,* 398 Mass. 561, 570 (1986). If the defendant did nothing more than stipulate as to evidence which warranted, but did not require, findings of guilty (see *Commonwealth* v. *Nydam,* 21 Mass. App. Ct. 66, 68 n.2 [1985]), he is not to be taken as having pleaded guilty to either indictment. With those distinctions in mind, we turn to the colloquy which gave rise to the findings of guilty.

The judge, who had obviously been advised in at least a general way of what to expect, advised counsel that he wanted to "hear the facts of the case." However, it seems clear from the context in which the judge used the words "facts" that what he meant was "evidence." Indeed, just two pages earlier in the

[9] It appears from the defendant's supplemental appendix that the Immigration and Naturalization Service has indicated its intention to lodge a detainer against the defendant, probably as the prelude to the commencement of deportation proceedings. The defendant is a native of the Dominican Republic.

transcript, in the course of the colloquy over waiver of a jury trial, the judge had used "facts" in the sense of "evidence" when he explained to the defendant that whether he would find him guilty would depend on "what facts I hear and what law should be applied to the case." The judge's inquiry as to the "facts" was followed by a series of statements by the prosecutor which he characterized as "facts." However, what followed was little more than a summary of the evidence most favorable to the Commonwealth which had been adduced at the hearing on the motion to suppress conducted some thirteen months earlier. The prosecutor's further representations were interspersed with assertions such as "[t]he police would testify" and "[t]he testimony would be." Defense counsel[10] remained silent throughout the prosecutor's presentation. At its conclusion the judge asked both counsel whether "those are agreed upon, stipulated facts?" The prosecutor responded, "Yes, Your Honor." Defense counsel responded, "That's correct"; he offered no evidence. The judge then put the whole colloquy in proper perspective when he said, "there's sufficient *evidence* to warrant findings of guilt on" both indictments (emphasis supplied) "[a]nd I find that he's guilty of [both]."

At no time did the defendant offer a change of plea. Nowhere did he or his counsel agree to the truth of any of the representations made by the prosecutor. See *Commonwealth* v. *Stevens,* 379 Mass. 772, 774, 776 (1980). The prosecutor made no representation, nor was there any stipulation, as to the intent with which the defendant may have possessed the heroin or the cocaine. Contrast *Commonwealth* v. *Hill,* 20 Mass. App. Ct. at 130, 132 n.2. These were not District Court complaints for minor offences in which the usual reasons for admitting to sufficient facts are to test the waters on the severity of the penalty or to secure a continuance without a finding in the hope that a complaint will be dismissed somewhere down the road.[11] Contrast *Commonwealth* v. *Duquette,* 386 Mass. 834,

---

[10] The defendant was represented at trial, as he is on appeal, by counsel supplied by the Committee for Public Counsel Services.

[11] See generally Smith, Criminal Practice & Procedure § 1202, at 676 (2d ed. 1983).

835-836, 843 (1982); *Commonwealth* v. *Mahadeo,* 397 Mass. at 316. These were Superior Court indictments for serious offences in which there was no defence to the merits, in which the defendant's only hope lay in persuading an appellate court to reverse the order denying his motion to suppress the items found in his apartment, but in which appellate review would be foreclosed if he were to plead guilty or it should subsequently be ruled that he had done so in effect. *Commonwealth* v. *Nydam,* 21 Mass. App. Ct. at 68-69, and cases cited.

We see nothing tantamount to a plea of guilty to either indictment. We think it clear that the defendant did nothing more than suffer convictions in circumstances which would preserve his right to appellate review of the denial of his motion to suppress. Compare *Commonwealth* v. *Stevens,* 379 Mass. at 774-776; *United States* v. *Lawson,* 682 F.2d 1012, 1014-1016 (D.C. Cir. 1982); *United States* v. *Schmidt,* 760 F.2d 828, 834-835 (7th Cir. 1985).[12] Neither the provisions of Mass. R.Crim.P. 12(c) nor those of G. L. c. 278, § 29D, apply in the circumstances of this case.

*Judgments affirmed.*

---

[12] The two cases last cited were decided under Fed.R.Crim.P. 11(c), which is the Federal analog of Mass.R.Crim.P. 12(c)(3).