## COMMONWEALTH vs. ALBERT E. EPSOM.

Middlesex.   November 4, 1986. — February 18, 1987.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Homicide. Self-Defense. Practice, Criminal,* Capital case, Instructions to jury, Assistance of counsel. *Evidence,* State of mind, Impeachment of credibility. *Constitutional Law,* Assistance of counsel. *Conflict of Interest. Attorney at Law,* Conflict of interest.

The evidence at a murder trial did not raise the issue whether the defendant had acted in self-defense when he shot the victim three times during a confrontation outside a drinking establishment and, consequently, the defendant was not entitled to have the jury instructed on self-defense. [257-258]

The judge at a murder trial did not err in admitting evidence of the defendant's flight after the victim was shot, and in instructing the jury that they could properly consider that evidence on the question of the defendant's guilt, where evidence of flight tended to negate any claim of self-defense and, thus, to prove that the defendant had committed a criminal homicide. [258-259]

At a murder trial, no substantial risk of a miscarriage of justice was created by the prosecutor's cross-examination, without interference from the judge, of three defense witnesses concerning their failure to speak with police officers before the trial, and his argument to the jury that this failure reflected adversely on their credibility, where their testimony contributed nothing to any live issues at the trial. [259-260]

In the circumstances of a murder trial, defense counsel's failure to object to certain jury instructions and to the admission of certain evidence did not establish that the defendant had been denied the effective assistance of counsel. [260]

No genuine conflict of interest, impinging upon a criminal defendant's constitutional right to the effective assistance of counsel, arose from his trial attorney's simultaneous representation, in a civil action, of the father of a prosecution witness, where the attorney had no professional relationship with the witness himself, where the father and son were financially independent of each other, and where the father made no request that the attorney give the defendant any special consideration; moreover, the defendant made no showing that he was prejudiced by any tenuous conflict of interest that may have existed. [260-263]

INDICTMENTS found and returned in the Superior Court Department on March 29, 1983.

The cases were tried before *James P. Lynch, Jr.,* and motions for a new trial were heard by him.

*John H. Cunha, Jr.,* for the defendant.

*Fredric Lee Ellis,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. After a jury trial, the defendant was convicted of murder in the first degree, and of unlawfully carrying a firearm. The defendant filed timely claims of appeal. While the appeals were pending in this court, the defendant filed in this court motions for a new trial. Among the grounds in support of the motions was the claim that the defendant had been denied effective assistance of counsel by his trial attorney's dual representation of the defendant and the father of a witness for the Commonwealth.[1] A single justice of this court directed that the motions for a new trial be referred to the trial judge for a hearing on the conflict of interests issue. The judge conducted such a hearing, reported his findings, and, after discussing the relevant legal principles, denied the motions for new trial as to the claim of ineffective assistance of counsel due to dual representation. The defendant appealed.

Although the defendant filed timely claims of appeal from both convictions and from the denial of both motions for a new trial, he has neither argued, nor requested, in his briefs filed in this court, that we should reverse his conviction of unlawfully carrying a firearm. Our discussion, therefore, is limited to the defendant's conviction of murder in the first degree.

The defendant claims that the judge erred by (1) instructing the jury in such a way that the jurors reasonably could have understood that the defendant had the burden of proof on the issue of self-defense; (2) admitting evidence of flight and instructing the jury that they could consider that evidence in deciding the question of guilt; (3) admitting evidence of the failure of three witnesses for the defense to speak with police

---

[1] The defendant's counsel on appeal was not his trial counsel.

officers before the trial; and (4) permitting the prosecutor in his jury argument to attack the credibility of the witnesses on the basis of that evidence. The defendant also asserts that he was unconstitutionally deprived of the effective assistance of counsel by his counsel's failure to object at trial to the aforementioned rulings and instructions and by his counsel's simultaneous representation of him and the father of the Commonwealth's witness. Lastly, the defendant asks us to exercise our power under G. L. c. 278, § 33E (1984 ed.), to reduce the verdict of murder in the first degree to murder in the second degree or manslaughter. We affirm both convictions.[2]

We recite some of the evidence presented to the jury. On March 19, 1983, at approximately 12:30 A.M. or 1:00 A.M., up to fifteen members of the Centaurs motorcycle club were present at the Press Box Pub in Waltham. Nearly all the Centaurs wore black leather vests with the club's insignia on the back. Some wore wristbands with spikes and black leather gloves with the fingers cut off. One had a belt with a hunting knife case attached. The Centaurs wore beards and had long hair, and were large men, weighing "a good two hundred pounds"; some, perhaps, weighed as much as three hundred pounds.

The defendant entered the bar accompanied by another man and three women. After an oral exchange between the defendant and the barmaid, the barmaid said that she intended to call the police, and the defendant told her to "go ahead." The defendant and one of the Centaurs, Robert Ferrazzani, exchanged epithets, and Ferrazzani then charged the defendant. Ferrazzani tripped in the process and ended up face down on the floor at the defendant's feet. The defendant then held Ferrazzani on the floor. At this point someone hit the defendant on the side of the head with a bottle. The defendant's companion, Thomas Hutton, stepped toward the person with the bottle but several of the Centaurs grabbed him, pulled him into a booth, and punched him. Someone hit Hutton and a bystander with a bottle.

---

[2] We affirm the conviction of unlawfully carrying a firearm without discussion because it appears to be before us although not argued.

The defendant told Ferrazzani that he would let him up if he would stop fighting. The defendant released Ferrazzani and went with his companions to the door, where he turned and asked if he were leaving as a friend. Ferrazzani replied, "You came in as a fat fucking pig and you're leaving as a fat fucking pig." The defendant walked out and four of the Centaurs, including the victim, James Wilson, followed him.

Outside, there were several people on the sidewalk including four to six Centaurs. Hutton told his female companions to get into their nearby car. The defendant spun around and picked up a firearm that had fallen from his person to the ground. He placed the gun in his belt, raised both hands, and said, "It's away, it's away," or "It's back in my holster." One of the Centaurs told the defendant that none of them had guns, that none of them wanted trouble, and that they just wanted to go home. Other Centaurs were yelling at the defendant and Hutton.

Then, the defendant pulled his gun from his belt, stated "I don't care if there's twenty of you; I'm not afraid of nobody," waved the gun back and forth, and fired a shot into the sidewalk. After the shot, the victim said "[G]et the fuck out of here." The defendant then said, "[F]uck you," and shot the victim in the arm. The defendant turned to his left, kicked one of the Centaurs in the groin, and then turned back to his right and shot the victim again. He shot the victim a third time. The fatal shot entered the victim's chest.

We begin our discussion of the issues raised by the defendant with the defendant's assertion that the judge improperly instructed the jury on self-defense. "A defendant is entitled to have the jury at his trial instructed on the law relating to self-defense if the evidence, viewed in its light most favorable to him, is sufficient to raise the issue." *Commonwealth* v. *Harrington,* 379 Mass. 446, 450 (1980), citing *Commonwealth* v. *Monico,* 373 Mass. 298, 299 (1977). In order to raise the issue, there must be evidence of an overt act against the defendant constituting an assault or threat, *Commonwealth* v. *Doucette,* 391 Mass. 443, 453-454 (1984); *Commonwealth* v. *Shaffer,* 367 Mass. 508, 514-515 (1975), sufficient to place the defendant in actual and reasonable apprehension of grievous

bodily harm or death. *Commonwealth* v. *Kendrick,* 351 Mass. 203, 211 (1966). *Commonwealth* v. *Houston,* 332 Mass. 687, 690 (1955). Moreover, there must be evidence that the defendant "availed himself of all proper means to avoid physical combat before resorting to the use of deadly force." *Commonwealth* v. *Harrington, supra* at 450. *Commonwealth* v. *De-Caro,* 359 Mass. 388, 390 (1971).

In our recitation of the evidence, in keeping with our case law, we have been careful to include all the evidence which, viewed in its light most favorable to the defendant, might raise the issue of self-defense. We are satisfied that the evidence was insufficient to raise that issue. The only evidence of an assault against the defendant related to events inside the pub. There was no evidence that the defendant was assaulted or threatened outside the pub, or that the entire series of events, including those within the pub, caused the defendant to be without reasonable means of escape and to be actually and reasonably in fear of grievous bodily harm or death when he shot the victim. Therefore, the defendant was not entitled to a jury instruction on self-defense, and it is unnecessary for us to review the instruction that was given.

We turn to the defendant's claims that the judge erred in admitting evidence of his flight following the shooting, and in instructing the jury that they could consider that evidence on the question of the defendant's guilt. The contested evidence was that the defendant fled to New Jersey after the incidents at the pub, and that a search of his hotel room revealed newspaper articles concerning the shooting and the search for the defendant. The defendant appears to contend that, although that evidence would have been admissible had the defendant denied shooting the victim, it was not admissible here because evidence of consciousness of guilt does not tend to show malice or premeditation or lack of self-defense, and those were the only live issues at trial. The defendant cites *Commonwealth* v. *Lowe,* 391 Mass. 97, 108 n.6, cert. denied, 469 U.S. 840 (1984), in support of his position. We reject the defendant's argument. Evidence of flight is admissible to prove consciousness of guilt, *Commonwealth* v. *Toney,* 385 Mass. 575, 583

(1982), and consciousness of guilt, together with other evidence, may establish guilt. *Commonwealth* v. *Porter,* 384 Mass. 647, 653 (1981). The defendant's reliance on *Commonwealth* v. *Lowe, supra* at 108 n.6, is misplaced. In that case, we said that "[consciousness of guilt] evidence, while relevant to the issue whether a criminal homicide was committed, is not evidence of malice aforethought." *Id.* Thus, while consciousness of guilt evidence cannot be used to prove that a criminal homicide was murder rather than manslaughter, it is admissible, as here, on the question whether a criminal homicide had been committed. See *Commonwealth* v. *Blaikie,* 375 Mass. 601, 605-606 (1978). Homicide in the legitimate exercise of self-defense is not criminal. Therefore, evidence of flight was properly admitted on the self-defense issue even though, as things turned out, there was insufficient evidence of self-defense to warrant submission of that issue to the jury. Furthermore, the judge's instructions concerning the evidence of flight were correct. The judge complied fully with our recommendations in *Commonwealth* v. *Toney, supra* at 585 n.6. The defendant's only criticism of the instructions in this regard tracks his argument, which we have rejected, that the evidence of flight was inadmissible.

The next contention that we address is that the prosecutor, without interference from the judge, cross-examined three defense witnesses concerning their failure to speak with police officers before the trial, and argued to the jury that this failure reflected adversely on their credibility. That type of inquiry is proper only when a proper foundation has been laid, *Commonwealth* v. *Berth,* 385 Mass. 784, 790-791 (1982), *Commonwealth* v. *Brown,* 11 Mass. App. Ct. 288, 296-297 (1981), but we need not decide whether a proper foundation was laid in this case because, in the absence of objection, as here, the defendant is entitled to relief only if the evidence and.related argument created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Nieves,* 394 Mass. 355, 358-359 (1985). *Commonwealth* v. *Albert,* 391 Mass. 853, 857 (1984). There is no such risk. The testimony of the three witnesses was limited to events inside the pub. None of the witnesses refuted

the testimony of the Commonwealth's witnesses about the events outside; in particular, they contributed no information that bore on the defendant's claim of self-defense. No reversible error has been shown, therefore.

We pause only briefly to recognize the defendant's next contention, that is, that he was deprived of the effective assistance of counsel by counsel's failure to object to the several jury instructions and to the admission of evidence discussed above. In view of our conclusions concerning those issues, it is apparent that the defendant has not established "behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer" or that counsel's behavior "likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

The defendant's motion for a new trial was partially grounded on several of the claims that we have addressed above, and, for the reasons we have stated, those claims do not adequately support the motions. The only additional ground in support of the motion for new trial was that, at the time of the defendant's trial, his counsel represented the father of a witness for the Commonwealth. The judge's findings after the hearing on the motions for a new trial are significant. The judge in material part found as follows. Before the defendant was indicted, the witness's father had been injured in a motor vehicle accident. His claim for damages was handled by the defendant Epsom's counsel on referral from another attorney. Counsel had not previously represented the father. After the defendant was convicted in this case, the father's civil action was settled for $3,000. Counsel's fee was $1,000.

In preparing for the defendant's trial, counsel sought the assistance of the witness's father in persuading the witness to grant counsel a pretrial interview. The witness's father attempted on two occasions to arrange such an interview, but the witness refused. Counsel did not ask the witness's father to do anything else. The father never asked counsel to give his son, the witness, any special consideration as a witness.

The judge further found that, at all material times, the witness and his father were mutually independent financially, that they did not live together, that the witness's decision not to speak to counsel "had nothing whatsoever to do with the fact that [counsel] represented his father in the civil action," and that the witness "did not want to help Epsom in any way, because he was bitter that Epsom had killed his (the son's) best friend." The judge found: "[Counsel] 'pulled no punches' on his cross-examination of the son. It was lengthy, detailed, searching, vigorous, and in an appropriately adversary posture. It culminated in [counsel's] impeaching the credibility of the witness by the introduction of five records of criminal conviction. I find nothing in the cross-examination of the son which in any way suggests that [counsel's] cross-examination of him was inhibited or restrained at all by his representation of the father. I find nothing in the entire conduct of his representation of Epsom that leads me to conclude that [counsel's] trial strategy or tactics were in the slightest affected by his representation of the father in the civil case. It was purely coincidental."

The defendant argues that he was denied the effective assistance of counsel, guaranteed by art. 12 of the Massachusetts Declaration of Rights, because his trial counsel's simultaneous representation of him and the father of the Commonwealth's witness constituted a genuine conflict of interest. *Commonwealth* v. *Hodge,* 386 Mass. 165, 167-170 (1982). When a defendant shows a genuine conflict of interest, neither prejudice nor adverse effect on trial counsel's performance need be shown. *Id.* at 169-170. In addition, the defendant argues that, in fact, he was prejudiced by counsel's dual representation. He appears to base this assertion on the fact that counsel had an economic interest in not impairing his relationship with the witness's father. The defendant's assertion of prejudice is also based on the witness's response at trial to a question put to him by counsel on recross-examination. The question was, "And I requested to talk to you, but you refused to talk to me, didn't you, sir?" The response was, "Only because you're my father's attorney." The witness's answer, the defendant argues,

demonstrates that counsel's representation of the father caused the son to refuse to speak with counsel before the trial.

In *Commonwealth* v. *Hodge, supra* at 168, we held that defense counsel had a genuine conflict of interest when his representation of the defendant was simultaneous with his law partner's representation in an unrelated civil case of a witness for the Commonwealth. We reasoned that the genuine conflict, not requiring proof of adverse consequences, was defense counsel's financial interest in not antagonizing an office client "by a vigorous cross-examination designed to discredit him, and his duty to consider only [the defendant's] best interests in deciding whether and how to cross-examine [the witness]." *Id.* at 168. Conflict was inherent in the situation that existed in *Hodge,* and therefore, recognizing the difficulty "of probing the resolve and the possible mental conflict of counsel," *id.* at 169-170, we conclusively presumed that the defendant had suffered actual prejudice or that there had been an adverse effect on his counsel's performance. Here, however, defense counsel had no professional relationship with the Commonwealth's witness. Furthermore, the father and son were financially independent of each other, they did not reside together, and the father made no request that counsel give the son special consideration. It cannot fairly be said on the facts of this case that vigorous cross-examination designed to discredit the witness was so likely to antagonize the witness's father that prejudice or adverse effect was inherent in the situation and ought to be presumed. We conclude that the defendant, on whom the burden of proof rests, *Commonwealth* v. *Shraiar,* 397 Mass. 16, 20 (1986), has not established that counsel had a genuine conflict of interests entitling the defendant to a new trial.

Although the defendant has not established a genuine conflict of interest, he would be entitled to a new trial if he were to establish that a "tenuous" conflict existed and that it resulted in his being materially prejudiced. *Commonwealth* v. *Shraiar, supra* at 20, 24. However, no such prejudice has been demonstrated. The judge's findings concerning counsel's rigorous cross-examination of the witness defeat any claim that counsel

was reluctant to level a full scale attack on the witness's credibility or that counsel's trial strategy was affected in any way by his relationship with the witness's father. Furthermore, the defendant's argument, that he was denied access to the witness before the trial because counsel had spoken to the father about paving the way for an interview, is without merit. There has been no showing that such an interview would have benefited the defendant. Also, even if there had been such a showing, the judge found on clearly adequate evidence that, despite the witness's trial testimony that he refused to talk to defense counsel because counsel was his father's attorney, the witness refused the pretrial interview only because he did not want to help the defendant. The defendant has not demonstrated either a genuine conflict of interest on the part of counsel or a tenuous conflict resulting in material prejudice. Therefore, his ineffective assistance of counsel claim based on conflict of interest fails.

Consistent with our obligations under G. L. c. 278, § 33E, we have considered the entire case on the law and the evidence, and conclude that the defendant's conviction for murder in the first degree was neither against the law nor against the weight of the evidence. We also conclude that the interests of justice do not require either a new trial or entry of a verdict of a lesser degree of guilt than that found by the jury.

We briefly address the defendant's c. 278, § 33E, arguments. First, although intoxication may reduce the degree of guilt, no evidence was presented that the defendant was intoxicated at the time of these tragic events. Indeed, the witnesses consistently testified that he did not appear intoxicated that evening, and his trial counsel agreed that the evidence did not support an instruction on intoxication. Second, the fact that the defendant and the victim had little or no contact prior to these events is inconsequential, and does not justify relief under § 33E. Finally, the defendant suggests that the homicide occurred "in the heat of sudden affray or combat," a recognized ground of § 33E relief. See Commonwealth v. Baker, 346 Mass. 107, 119 (1963). Considering all the circumstances of this case, however, including the fact that the defendant apparently en-

tered a crowded pub while carrying a loaded semi-automatic pistol, this is not an apt occasion for mitigating guilt.

*Judgments affirmed.*