## COMMONWEALTH *vs.* GEORGE J. YAZBECK, JR.

No. 90-P-1206.

Middlesex. November 7, 1991. - January 9, 1992.

Present: DREBEN, FINE, & IRELAND, JJ.

*Self-Defense. Practice, Criminal,* Instructions to jury. *Controlled Substances. Search and Seizure,* Nighttime search, Forcible entry by police.

In a criminal case the judge's erroneous instructions with respect to self-defense created a substantial risk of a miscarriage of justice so as to entitle the defendant to a new trial on the charge of assault by means of a dangerous weapon. [771-772]

In a criminal case, the findings of the judge supported his conclusion that a search of a dwelling following a forcible entry in the nighttime by police officers in the course of the execution of a search warrant was not unreasonable in the circumstances. [772-774]

At the trial of an indictment for trafficking in marihuana, the evidence of the defendant's knowledge and intention was sufficient for the jury to conclude beyond a reasonable doubt that the defendant possessed over one hundred pounds of marihuana found in the basement of a house belonging to another wherein the defendant was arrested. [774-775]

INDICTMENTS found and returned in the Superior Court Department on March 31, 1988.

A pretrial motion to suppress evidence was heard by *Guy Volterra*, J., and the cases were tried before *Richard S. Kelley*, J.

*Richard J. Shea* for the defendant.

*Nancy W. Geary*, Assistant Attorney General, for the Commonwealth.

FINE, J. The defendant seeks reversal of his convictions of trafficking in marihuana, trafficking in cocaine, and assault by means of a dangerous weapon. We affirm the drug trafficking convictions. We agree with the defendant, however, that an error in the instructions on self-defense, the result of

an obvious slip of the tongue which went unnoticed at the time by defense counsel, created a substantial risk of a miscarriage of justice so as to entitle the defendant to a new trial on the charge of assault by means of a dangerous weapon.

1. *The instructions on self-defense.* The Commonwealth's evidence relating to the charge of assault by means of a dangerous weapon consisted of the following. Boston Police Detective Paul Barnicle was one of the officers executing a search warrant at a residence located at 7 Ingleside Road in Natick at 10:45 at night. Entry was gained by breaking in the front door with a sledgehammer. Present in the living room at the time were the defendant, his mother, and the defendant's girlfriend, Susan O'Dell. The defendant was dressed; the two women were in nightclothes. When Detective Barnicle entered the house and walked down the hall, the defendant appeared with a loaded rifle aimed directly at the officer. The officer was placed in fear for his life but was able to disarm the defendant and place him under arrest.

The defendant offered the following evidence. Susan O'Dell was estranged from her husband, "Digger." On several recent occasions at the Natick residence, Digger had threatened Susan, beaten her up, and vandalized her car. He had also threatened to shoot the defendant and his mother. Just two days before the search, Susan had obtained a restraining order against Digger under G. L. c. 209A. The defendant, his mother, and Susan were in the living room watching television when they suddenly became aware that someone was breaking in through the front door. They had not heard any knocking or announcement by the police. The defendant's mother screamed, "It must be Digger," and they all became fearful. Susan ran into a bedroom and hid in a closet. The defendant ran down the hall and grabbed the loaded rifle.

The judge instructed the jury on the elements of the offense of assault and battery by means of a dangerous weapon and then proceeded to discuss self-defense. He said, in obvious error, "In considering whether the defendant acted in

self-defense, you must consider *the defendant bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense*" (emphasis added). He went on to say, "If you find that the Commonwealth has failed to sustain this burden beyond a reasonable doubt, then you must find the defendant not guilty. If you find that the Commonwealth had met its burden beyond a reasonable doubt, then you may find the defendant guilty of this charge." He then specified the various elements that must be shown before a defendant may exercise the right of self-defense. For example, he said: "But in this particular situation you must first make a determination that . . . [the defendant] knew that the person against whom he was undertaking self-defense was a police officer." At no point during the charge did the judge tell the jurors that the Commonwealth had the burden of proving the absence of self-defense or that such proof had to be beyond a reasonable doubt.

The judge's first statement to the jury concerning self-defense, although it made no sense, placed the burden of proving the absence of self-defense beyond a reasonable doubt on the wrong side. See *Connolly* v. *Commonwealth*, 377 Mass. 527, 533-536 (1979); *Commonwealth* v. *Harrington*, 379 Mass. 446, 453 (1980). The next part, suggesting the Commonwealth had a burden, at best created confusion. Nothing was said in the remainder of the charge on self-defense that was inconsistent with the first incorrect statement. In their entirety, we think the instructions would have conveyed to a reasonable juror the impression that self-defense was for the defendant to prove. "Self-defense is a sensitive part of the jury instructions in a criminal trial, and inappropriate language in the instructions can readily lead to a result in which an appellate court lacks confidence." *Commonwealth* v. *Mejia*, 407 Mass. 493, 497 (1990). See *Commonwealth* v. *Rodriguez*, 17 Mass. App. Ct. 547, 551 (1984).

For the first time on appeal, the Commonwealth contends that the evidence of self-defense was insufficient to warrant any jury instruction on the issue and that any error in the instructions, therefore, should not be cause for reversal. That

is not persuasive. Given the recent serious threats against all three occupants of the house, the sudden smashing of the door could have been found by a jury, in the circumstances, to be a sufficiently threatening overt act to cause reasonable and actual apprehension of serious bodily harm or death on the part of the occupants. Contrast *Commonwealth* v. *Epsom*, 399 Mass. 254, 257-258 (1987).

The Commonwealth bases its contention that evidence of self-defense was lacking primarily on the absence of any evidence that the defendant "took advantage of every opportunity to avoid the combat." *Commonwealth* v. *Lacasse*, 365 Mass. 271, 273 (1974). *Commonwealth* v. *Mains*, 374 Mass. 733, 736 (1978). It is unclear from the evidence, however, that the defendant had a reasonable means of escape. Moreover, such a requirement is not directly applicable to the present case as the defendant did not actually use deadly force or engage in combat. The proper inquiry in such circumstances is whether the defendant reasonably believed his menacing actions were necessary in the interests of protecting life or against serious bodily harm. On the defendant's version of the evidence, events happened fast, and he could reasonably have believed that any possible escape on his part would have left the defendant's mother and Susan at extreme risk. The claim of self-defense deserved serious consideration and should have been presented to the jury on proper instructions. The erroneous instructions gave rise to a substantial risk of a miscarriage of justice.

2. *The trafficking convictions.*

a. *Motion to suppress.* On March 17, 1988, by prearrangement, an undercover Boston police officer met with the defendant at the Natick residence. The officer sold the defendant a pound of marihuana, and they discussed the sale to the defendant of an additional ninety-nine pounds of marihuana at the rate of $900 per pound. The defendant told the undercover officer that, so long as it was "good stuff," he would be able to resell a similar quantity as often as every other week. The officer telephoned the defendant at the Natick residence several times over the next few days to discuss

the proposed drug sale. On the basis of those events, the police obtained a warrant to search the Natick premises. The warrant authorized an unannounced nighttime search. Both sides agree that the affidavit supporting the warrant provided no basis to justify a no-knock provision.

At approximately 10:45 P.M. on March 24, 1988, the police entered the Natick home after breaking in the front door with the aid of a sledgehammer. One hundred fifteen pounds of marihuana, forty-three grams of cocaine, a considerable amount of paraphernalia related to the distribution of drugs, and $479 in cash were found by the police in the course of executing the warrant.

The defendant filed a motion to suppress the fruits of the search on the ground, among others, that the forceful nighttime search was unreasonable. After an evidentiary hearing, the motion judge issued findings crediting the police officer's testimony that they had knocked several times, announced their presence and purpose, and waited about thirty seconds before starting to force their way in. Although a search warrant may be executed in the nighttime only if the warrant so directs, see G. L. c. 276, § 2, a magistrate need not identify a specific reason to authorize such a search. See *Commonwealth* v. *Garcia*, 23 Mass. App. Ct. 259, 261 (1986). As the motion judge recognized, however, the resulting search is still subject to the reasonableness requirement of art. 14 of the Massachusetts Declaration of Rights. *Id.* at 263. He carefully considered the various relevant factors: the late hour; the type of structure (a single-family home); the fact that the defendant was dressed, and the other two occupants, his mother and Susan O'Dell, were in nightclothes; the conduct of the police; and the observation by police before entering that a television set was on in the living room. He concluded, in light of the circumstances, that the search came "perilously close to being unreasonable, but [did] not cross the line into unreasonableness."

On appeal, the defendant claims the judge's conclusion was erroneous, but we do not so find. Although nighttime searches of homes, particularly if forceful, are potentially

dangerous and, by their nature, offensive, see *Commonwealth v. DiStefano*, 22 Mass. App. Ct. 535, 542 (1986), they are tolerated in a narrow category of cases. Not every case involving a search for narcotics falls into that category. Because of the ease of destruction of narcotics and the protection afforded seasoned traffickers by the cover of darkness, however, some nighttime searches for narcotics may be found reasonable. See *Commonwealth v. Garcia*, 23 Mass. App. Ct. at 262.

In the present case, apart from the large quantities of narcotics in which the defendant appeared to be dealing and the relevant factors considered and carefully weighed by the judge, we note that, in the presence of the undercover Boston police officer, the defendant in a telephone conversation with a business associate had discussed an 11:00 P.M. meeting at the Natick home.

The defendant asks us to consider the evidence that the officers could have rung the doorbell. They testified that they did not look for a doorbell and did not know it was there. Had they rung the doorbell, it is possible a forcible entry would not have been necessary. Given the occupants' failure to respond to the numerous knocks and announcement, however, we do not think the failure to use the doorbell made the search unreasonable.

b. *Sufficiency of evidence of possession of marihuana.* The defendant contends that there was insufficient evidence linking him to the large quantity of marihuana, the basis of the marihuana trafficking charge, found in a locked closet in the basement of the residence. He raised the issue at trial by filing a motion for a required finding of not guilty at the close of the Commonwealth's case. Having considered the Commonwealth's evidence on the point in the light most favorable to it, we conclude that a jury could reasonably have found possession of the marihuana beyond a reasonable doubt.

One may be found to be in possession of an object when he has the ability and intention to exercise dominion and control over it. See *Commonwealth v. Arias*, 29 Mass. App. Ct. 613, 617-618 (1990), *S.C.*, 410 Mass. 1005 (1991); *Common-*

*wealth* v. *Rivera, ante* 554, 556 (1991). Such possession may be constructive rather than actual; it may be joint and not exclusive; and it may be proved by circumstantial evidence. *Commonwealth* v. *Arias*, 29 Mass. App. Ct. at 617-618. Mere presence where narcotics are kept is an insufficient basis for an inference of their possession. *Id.* at 618. The existence of some incriminating evidence in addition to mere presence, however, may be sufficient to warrant such an inference. See *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 410 (1989).

There was incriminating circumstantial evidence in the present case beyond the defendant's mere presence in the house where the marihuana was found. He had purchased marihuana from an undercover police officer at the Natick residence one week before the search, and, in his conversations with the officer about further purchases, he revealed that he dealt regularly in marihuana. The defendant was in possession of other narcotics; he admitted owning a briefcase in which forty-three grams of cocaine were found. Based upon the evidence of the defendant's familiarity with the whole first floor of the house, the fact that his possessions were located throughout the house, his presence at the house on the two occasions when police officers visited and on the frequent occasions over several days when they tried to reach him by telephone, and the use of the Natick address on his firearms identification card, a reasonable fact finder could infer that the defendant was at least one of the regular occupants of the Natick residence. The basement is easily accessible from the first floor living area. In addition to the closet containing the marihuana, the basement housed a recreational area and a freezer filled with meat.[1] The marihuana gave forth a noticeable odor. The evidence suggesting that the defendant knew the marihuana was in the basement and was at least one of the individuals who intended to exercise dominion and control over it was more than adequate to warrant an inference of possession.

---

[1]There was evidence on behalf of the defendant that the defendant operated a meat business out of the residence.

Accordingly, the judgments on the indictments charging trafficking in marihuana and trafficking in cocaine are affirmed. The judgment on the indictment charging assault by means of a dangerous weapon is reversed, and the verdict is set aside.

*So ordered.*