COMMONWEALTH *vs.* ANTHONY E. CATALDO. No. 92-P-1320. December 6, 1994. *Practice, Criminal*, Instructions to jury. *Self-Defense. Defense of Others*. Further appellate review granted, 419 Mass. 1106 (1995).

Claiming that the Superior Court judge's jury instructions on self-defense and defense of another were erroneous and that the errors created a substantial risk of a miscarriage of justice, the defendant seeks reversal of his conviction on an indictment charging him with assault by means of a dangerous weapon. We conclude that the defendant is entitled to a new trial and reverse.

1. *The evidence.* We recite the evidence, viewing it in the light most favorable to the defendant. See *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980); *Commonwealth* v. *Epsom*, 399 Mass. 254, 257 (1987). During the early morning hours of March 18, 1990, the defendant, while driving his tow truck in the Copley Square area of Boston, met two friends. He agreed to follow and join the two men at a lounge on Tremont Street. His friends double-parked in front of the lounge, and the defendant parked his truck, which had his name written on the door, in a nearby alley. After about fifteen minutes in the lounge, the three men walked a short way down the street to a pizza window. While the defendant waited to buy a piece of pizza, he was pushed by several male patrons who were also standing in line. One of the men tried to grab a gold chain from the defendant's neck. The defendant pushed him away, and a scuffle broke out

---

among eight or nine of the men milling about the window. Someone who knew the defendant called out his name and pulled him away from the others. The defendant became apprehensive and angry that his name, which appeared on his tow truck, had been called out for everyone to hear.

As this scuffle was going on, a bystander ran back into the lounge and spoke to two men whom he knew to be Boston police officers. Detectives Joseph Britt and John Martel, both in plainclothes, had stopped into the lounge after completing their shift at about 1 A.M. The bystander told the detectives that there was a fight outside the bar, and Martell and Britt went outside. At this point, the defendant was a few feet from his friend's car, and his friend, Kevin Hardy was in the driver's seat. Martel, who had drawn his service revolver, stood about seven to twelve feet from the defendant. As Britt went around the rear of the vehicle on the driver's side, Hardy got out of the car and started to walk toward Britt. Britt drew his revolver, pulled Hardy to the rear of the car, pushed him onto the trunk, and pointed his gun at his head.

According to the defendant, it was at this point that he reached beneath his sweatshirt for the handgun in his belt.[1] When he did so, Britt shot him in the chest and he fell to the ground. The officers ran to retrieve the defendant's gun and yelled that they were police officers. Although Britt and Martel testified that they had identified themselves as police officers from the outset, the defendant stated that everything happened so quickly that he never heard either officer identify himself, that he thought Britt was part of the melee at the pizza window, and that he did not realize they were police officers until after he had been shot.

2. *The jury instructions.* Erroneously proceeding on the basis of the evidence most favorable to its position, the Commonwealth argues that the defendant was the aggressor and, therefore, not entitled to jury instructions on self-defense and defense of another. As might be expected in circumstances such as those here presented, the testimony of the witnesses sometimes conflicted on different and important points, such as whether the defendant had drawn his gun and was pointing it at the detectives and whether the defendant had to have heard Britt and Martel state that they were police officers. As noted, however, "[a] defendant is entitled to have the jury at his trial instructed on the law relating to self-defense if the evidence, viewed in its light most favorable to him, is sufficient to raise the issue." *Commonwealth* v. *Harrington*, 379 Mass. at 450. The defendant's testimony, which was corroborated by some witnesses and contradicted by others, was more than sufficient to put the issues of self-defense and defense of another (Hardy) to the jury. See *Commonwealth* v. *Epsom*, 399 Mass. at 257-258, and cases therein cited.

---

[1]The defendant carried a gun, which he was licensed to do, while working because he did not accept credit cards and, therefore, usually had large amounts of cash with him.

In charging the jury on these crucial issues, the judge instructed that a "person may lawfully *use reasonable force* to defend himself from physical attack," and that "[i]n order to defen[d] oneself with a dangerous weapon likely to cause serious bodily injury or death, the person using the weapon must have a reasonable ground to believe and must actually believe that he was in imminent danger of death or serious bodily injury from which he can only save himself by *using deadly force*." (Emphasis added). The problem with the instruction on the particular facts of this case is that the defendant "did not actually use deadly force or engage in combat." *Commonwealth* v. *Yazbeck*, 31 Mass. App. Ct. 769, 772 (1992). The issue to be considered by the jury was whether the defendant's belief, that he needed to threaten Britt or Martel with the use of force in defense of Hardy or himself, was reasonable. "The proper inquiry in such circumstances is whether the defendant reasonably believed his menacing actions were necessary in the interests of protecting life or against serious bodily harm." *Ibid*.

Although there was no objection to the instruction, we conclude that it gave rise to a substantial risk of a miscarriage of justice.[2] On all versions of the evidence, the events happened very quickly. Lounges in the area were closing, and there was much traffic and noise. A large number of people, some of whom were shouting, were standing in the immediate area of the confrontation. On the instruction given, the jury could have accepted the defendant's version of the events and returned a guilty verdict on the basis that those events did not warrant the use of deadly force. Upon correct instructions, however, the jury might well have determined that the defendant's menacing gestures were a reasonable response to the threat which he stated was posed to him and Hardy and that they were not an assault by means of a dangerous weapon.

It could also be that the jury determined that the defendant heard Martel, but not Britt, identify himself as an officer, that the defendant pointed his gun only at Britt, who was holding a gun to Hardy's head, and that any immediate danger presented by Britt was to Hardy and not the defendant.[3] Nonetheless, there is a substantial risk that the erroneous instruction gave rise to a miscarriage of justice in respect to the defendant's claim of his defense of Hardy, a right generally treated as co-extensive with the right of self-defense. See *Commonwealth* v. *Johnson*, 412 Mass. 368, 372-373 (1992), and cases and authorities therein discussed. However, the instruction on defense of another not only lacked clarity, it also relied upon and repeated the earlier instruction on self-defense which erro-

---

[2]Appellate counsel was not trial counsel.

[3]The jury found the defendant not guilty on the indictment charging him with assault of Martel by means of a dangerous weapon, and the judge entered verdicts for the defendant on the four indictments charging him, in respect to Britt and Martel, with armed assault with intent to kill and armed assault with intent to murder.

neously focused upon the reasonableness, in light of all the circumstances, of the use of force rather than menacing gestures.

On the evidence presented, we conclude that the instructions on self-defense and defense of another were erroneous and that the errors gave rise to a substantial risk of a miscarriage of justice. As the defendant's remaining claims concern the relevancy of certain evidence and the exercise of discretion, we think they should be determined in the first instance by the Superior Court judge who presides at any retrial that might occur.

*Judgment reversed.*

*Verdict set aside.*

*Anthony M. Cardinale* (*Nicholas J. Di Mauro* with him) for the defendant.

*John P. Zanini,* Assistant District Attorney, for the Commonwealth.