## COMMONWEALTH *vs.* ANTHONY CATALDO.

Suffolk. January 12, 1996. - July 26, 1996.

Present: LIACOS, C.J., LYNCH, O'CONNOR, & FRIED, JJ.

*Assault by Means of a Dangerous Weapon. Practice, Criminal,* Instructions to jury, View, Motion in limine. *Self-Defense. Defense of Others. Words,* "Deadly force."

At the trial of an indictment for assault by means of a dangerous weapon, the judge's instructions to the jury created a substantial risk of a miscarriage of justice where, on conflicting evidence of the defendant's acts and intent, the jury should have been instructed properly on the definition of deadly force and the use of deadly force in self-defense and should have determined the issue whether or not the defendant's acts constituted the use of deadly force in the circumstances. [320-327] O'CONNOR, J., concurring, was of opinion that the defendant's intent was irrelevant to the self-defense issue.

INDICTMENT found and returned in the Superior Court Department on April 19, 1990.

The case was tried before *Robert Malcolm Graham*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John P. Zanini*, Assistant District Attorney, for the Commonwealth.

*Anthony M. Cardinale* (*Nicholas J. DiMauro* with him) for the defendant.

LIACOS, C.J. On June 3, 1991, Anthony Cataldo was convicted by a jury of assault by means of a dangerous weapon on Detective Joseph Britt.[1] On appeal he challenges

---

[1]Cataldo was indicted on the following charges: two indictments charging assault by means of a dangerous weapon (G. L. c. 265, § 15A [1994 ed.]), but it appears these two indictments were brought under G. L. c. 265, § 15B. Additionally, the grand jury returned two indictments charging assault with intent to murder while armed with a dangerous weapon (G. L. c. 265, § 18 [1994 ed.]), and two indictments charging armed assault with intent to kill. The two indictments charging armed assault with intent to

the judge's charge on the use of deadly force in self-defense, the judge's denial of his motion for a view, and the judge's allowance of certain evidence. The Appeals Court set aside the verdict, concluding that *the judge's instruction on self-defense improperly allowed the jury to convict the defendant on the basis that his actions constituted an excessive use of force in response to the level of force presented. Commonwealth* v. *Cataldo*, 37 Mass. App. Ct. 957 (1994). We allowed the Commonwealth's application for further appellate review. We granted further appellate review to consider whether brandishing a gun constitutes the use of deadly force in the context of self-defense.

We recite the evidence in the light most favorable to the defendant. See *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980), citing *Commonwealth* v. *Monico*, 373 Mass. 298, 299 (1977) (defendant entitled to instruction on self-defense if warranted by the evidence, viewed in light most favorable to defendant). In the early morning hours of March 18, 1990, the defendant, while working as a tow-truck operator, met two friends and followed them to Dominic's Lounge in the Back Bay section of Boston. The defendant carried a licensed handgun because of the large amounts of cash he carried and the dangerous nature of his automobile repossession work. The three men entered the lounge briefly before walking down the street to join a line of persons waiting nearby to buy pizza. A scuffle broke out, and someone who knew the defen-

---

kill were dismissed prior to trial on the Commonwealth's motion. Motions for required findings of not guilty were allowed on the indictments charging assault with intent to murder while armed with a dangerous weapon subsequent to the close of all the evidence. The jury found the defendant guilty of assault by means of a dangerous weapon on Detective Joseph Britt and not guilty of assault by means of a dangerous weapon on Detective John Martel.

The thrust of the offense "of assault with a dangerous weapon, G. L. c. 265, § 15B, is an outward demonstration of force, and § 15B requires only apparent ability to injure." *Commonwealth* v. *Appleby*, 380 Mass. 296, 305 (1980). In contrast, "§ 15A requires an assault by means of a dangerous weapon . . . *and also* an intentional, unjustified touching, however slight, by means of that dangerous weapon." *Id.* at 306. As will be seen, although the Commonwealth appears to believe the indictment was laid under § 15A (hence, carrying a potentially greater punishment), there was no evidence of a battery by the defendant. Instead, there was conflicting evidence as to whether there was an assault by means of a dangerous weapon in the context of the defendant's claim of self-defense or the reasonable defense of another.

dant pulled him away from the group. The defendant returned to the automobile of his friend, Kevin Hardy. Hardy was in the driver's seat, while the defendant stood by the passenger side door of the automobile.

During the scuffle moments earlier, someone entered Dominic's Lounge and informed off-duty Boston police Detectives Joseph Britt and John Martel of the scuffle on the street. The two officers were drinking at Dominic's, each having just come off work at 1 A.M. They were dressed in plain clothes. Detective Martel left the lounge first with his service revolver drawn. Detective Britt followed, proceeding around the rear of the automobile, and was met by the defendant's friend, Hardy, who was unarmed. Detective Britt pushed Hardy onto the trunk of the automobile, pointing his revolver at Hardy's head. The defendant reached for his handgun,[2] and was shot in the chest by Detective Britt. At the close of the trial, the defendant requested and received an instruction on self-defense and the defense of another. The testimony at trial, although conflicting on several important points, warranted jury instructions on both self-defense and the defense of another. See *Commonwealth* v. *Epsom*, 399 Mass. 254, 257-258 (1987), *S.C.*, 422 Mass. 1002 (1996). The judge's instruction is set out in the margin.[3]

We are concerned here with the correctness of the instructions, specifically, the use of "deadly force" language. In

---

[2]Some witnesses testified that the defendant drew his handgun or was pointing it at Officer Martel. Other witnesses corroborated the defendant's testimony, stating that they never saw the defendant with a gun.

[3]"Now, in this case, evidence has been offered that the defendant acted in self defense. A person may lawfully use reasonable force to defend himself from physical attack.

"Now, bearing in mind that the defendant does not have to prove anything, if evidence of self defense is present, the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in self defense. If the Commonwealth has failed to prove beyond a reasonable doubt that the defendant did not act in self defense, then you must find the defendant not guilty. In other words, if you have a reasonable doubt as to whether or not the defendant acted in self defense, then your verdict must be not guilty.

"In order to defense [*sic*] oneself *with a dangerous weapon likely to cause serious bodily injury or death*, the person using the weapon must have a reasonable ground to believe and must actually believe that he was in imminent danger of death or serious bodily injury *from which he can only save himself by using deadly force.*

analyzing challenged jury instructions, we examine the charge in its entirety to determine its impact on the jury's perception of their fact-finding function. *Commonwealth* v. *Mejia,* 407 Mass. 493, 495 (1990). The defendant did not object at trial to the instructions given, and thus reversal is warranted only if the instructions created a substantial risk of a miscarriage of justice. The Appeals Court concluded that instructing the jury as to the use of deadly force in self-defense created a substantial risk of a miscarriage of justice because the defendant's menacing gestures did not amount to the use of deadly force, and thus, in its view, there was no evidence of the use of deadly force. *Commonwealth* v. *Cataldo, supra* at 959.

A person may defend himself with the use of nondeadly force if he reasonably fears for his personal safety. Deadly force may be used in defense of oneself only on a reasonable belief that one is in imminent danger of death or serious bodily harm, and that no other means will suffice to prevent such harm. See *Commonwealth* v. *Bastarache,* 382 Mass. 86, 105 (1980). Deadly force is defined in this Commonwealth as "force intended or likely to cause death or great bodily harm." *Commonwealth* v. *Klein,* 372 Mass. 823, 827 (1977).

"That is, a reasonable person in the defendant's circumstances would reasonably believe that he was immediately about to be attacked, and that he was in immediate danger of being killed or seriously injured. In addition, *the defendant must have actually believed that he was in imminent danger of death or serious bodily harm.*

"*Now, a person who mistakenly believes that another person is about to physically attack him may* lawfully use self defense to defend himself, but only if that belief is reasonable in all of the circumstances. *A person may also lawfully use force to defense [sic] another person when a reasonable person in the actor's position would believe intervention was necessary for the protection of the other person; and in the circumstances, as that reasonable person would believe them to be, the other person could lawfully use such force to protect himself.*

"Remember, the defendant does not have to prove anything. If there is evidence that the defendant may have acted in self defense, the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in self defense" (emphasis supplied).

Earlier in his charge, the judge stated: "[T]he prosecution must show that the assault was committed by means of an instrument which by its nature or by the way it was used was capable of causing serious bodily injury or death. *Now, I am instructing you that as a matter of law a gun is a dangerous weapon.*" (Emphasis supplied.)

Even if we assume the defendant drew his gun, as the Commonwealth alleges, it would be for the jury to determine the reasonableness of force used by him and they alone must conclude whether such force was excessive in the circumstances. The instruction here required the jury to find that the defendant's actions constituted the use of deadly force if they found the defendant drew his gun. Also, if the jury believed the defendant engaged in the use of deadly force, they may have convicted him based on a belief that in the circumstances as presented to him, his use of deadly force was excessive.[4]

The conflicting evidence in this case indicated that the defendant did not draw his gun or merely reached for the gun tucked in his waistband or, in the alternative, drew his gun and pointed it at the detectives. In the latter context, a crucial question was whether the act of pointing a gun at another constituted the use of deadly force.

We conclude the proper rule is that in cases such as this where a weapon which, in some circumstances, is dangerous per se, see *Commonwealth* v. *Appleby*, 380 Mass. 296, 303 (1980), was not used in its intended deadly manner, i.e., it was brandished but not fired, the jury must determine whether the defendant intended to use the weapon in a deadly manner.[5] See *Commonwealth* v. *Klein, supra* at 827 (force intended to cause death or great bodily harm is deadly force). In this Commonwealth, acts intended to cause serious bodily injury constitute the use of deadly force in the context of self-defense.

---

[4]We do not agree with the Appeals Court that the defendant's action must be characterized as "menacing gestures" and did not constitute the use of deadly force as matter of law.

[5]We have held that a robbery is inherently dangerous to human life where an unarmed felon knows his accomplice is carrying a gun, even if he believes the gun is unloaded. *Commonwealth* v. *Carter*, 396 Mass. 234 (1985). This is in part because the use of an unloaded gun may provoke violent, even deadly, resistance on the part of a robbery victim or the police. The determination whether a crime is inherently dangerous necessarily takes into account the perspective of and likely effect of the crime on the victim. The analysis required in determining the use of force in self-defense, contrarily, focuses solely on the reasonable beliefs of the defendant using self-defense. While it is proper to consider the fear engendered by the use of a weapon when determining whether that weapon was "dangerous," as an element of the crime charged, the inquiry in a self-defense case properly turns on whether the defendant used force intended or likely to cause death or great bodily harm.

We cannot say as matter of law that a defendant who points a gun but is prevented from pulling the trigger does not intend to cause serious bodily injury or death. To do so would redefine the use of deadly force as a wholly objective determination. We believe it is proper to include within the definition of deadly force the threatening gestures of one who intends to inflict serious bodily harm or death. Where, as here, the evidence is conflicting and the jury would have been warranted in believing evidence that the defendant pointed a gun at another with or without the intent to shoot the latter, the jury must be instructed properly on the definitions of deadly force and the use of deadly force in self-defense, and the jury must determine whether the defendant's acts constituted the use of deadly force.

The Model Penal Code takes the position that a threat to use deadly force does not itself constitute deadly force, so long as the actor's intent is limited to creating an apprehension that he or she will resort to deadly force if necessary. ALI, Model Penal Code and Commentaries § 3.11 (1985).[6] See W.R. LaFave & A.W. Scott, Jr., Criminal Law § 53, at 392 (1972) (same). Deadly force as defined by the Model Penal Code includes "force the actor uses with the purpose of

[6]The 1972 Proposed Criminal Code of Massachusetts, which was not adopted, follows the lead of the Model Penal Code. That proposed code defines deadly force as "force which a person uses with the intent of causing, or which he knows to create a substantial risk of causing, death or serious bodily injury," and specifies that "[a] threat to cause death or serious bodily injury does not constitute deadly force, so long as the defendant's intent is limited to creating an apprehension that he will use deadly force if necessary." Massachusetts Criminal Law Revision Comm'n, Proposed Criminal Code of Massachusetts c. 263, § 32 (1972). Several States agree with the Model Penal Code that threatening the use of deadly force without the intent to actually use such force does not constitute the use of deadly force. See *Toledo* v. *Florida*, 452 So. 2d 661, 662 n.3 (Fla. Dist. Ct. App. 1984) (display of weapon without more is not deadly force); *State* v. *Williams*, 433 A.2d 765, 766 (Me. 1981) (threatening victim to "put the cymbal down or I'll kill you" while holding gun not deadly force under criminal statute); *Mattox* v. *Texas*, 874 S.W.2d 929, 935 (Tex. Ct. App. 1994) (threat by production of weapon is not deadly force if purpose limited to creating apprehension of force). The determination is not unanimous. See comments to N.Y. Penal Law § 10.00, at 21 (McKinney 1996) ("drawing a pistol, cocking it, holding it with two hands and arms extended, and aiming it at a person is the use of deadly physical force"); *Commonwealth* v. *Mayfield*, 401 Pa. Super. Ct. 560, 577-579 (1991) (pulling knife in self-defense is sufficient showing of deadly force to allow jury consideration).

causing or that he knows to create a substantial risk of caus-
ing death or serious bodily injury." This definition of deadly
force closely resembles the definition adopted in this Com-
monwealth, as force "intended or likely to cause death or
great bodily harm." *Commonwealth* v. *Klein, supra.* The of-
ficial comments to the Model Penal Code explain that allow-
ing one to threaten deadly force without the intent to use it
(unless necessary) advances the law of self-defense by avoid-
ing the duty to retreat in certain confrontations. Thus, a de-
fendant threatened by a knife held by an aggressor, who may
perhaps be weaker than the aggressor, may threaten the ag-
gressor with a gun without first having to retreat. If the knife-
wielding aggressor then retreats, the confrontation has ended
and the threatened use of force was permissible. If the aggres-
sor continues to pursue the defendant to the point at which
the defendant can no longer escape, the defendant is justified
in using deadly force by shooting the aggressor. See ALI,
Model Penal Code and Commentaries § 3.11 comment 2, at
160 (1985).

The rule advocated by the Appeals Court, that the threat
of deadly force cannot as a matter of law constitute the use of
deadly force, does not encourage retreat from altercations but
rather may encourage escalation of violence. Cf. *Com-
monwealth* v. *Carter,* 396 Mass. 234, 237 (1985) (use of
unloaded gun in robbery may provoke violent resistance and
thus is inherently dangerous to human life). Alternatively, in
a situation where a dangerous weapon is brandished but not
used in such a way that death or serious bodily harm is likely,
allowing a jury to determine whether the defendant's threat
of force (which, as we have explained, in and of itself need
not constitute the use of deadly force) was intended to cause
death or great bodily harm preserves the integrity of the duty
to retreat by not providing a "safe harbor" for the escalation
of violence. Moreover, a defendant who is threatened with
harm of the type that cannot be repelled other than by a
threat of deadly force is protected in his or her actions if the
actions are limited to merely creating an apprehension that
the defendant will resort to deadly force if necessary. The
problem of escalation is further minimized by the jury's ever
present role in determining if the defendant's actions are
excessive in light of the circumstances as perceived by the de-
fendant. Allowing the jury to determine whether a defendant's

use of a dangerous weapon in a manner not likely to cause death or great bodily harm constitutes deadly force protects those defending themselves from violence, avoids unnecessary escalation of force, and preserves the vital role of the jury in fact-finding. "[T]he question of whether a weapon is dangerous as used is always one for the fact finder." *Commonwealth* v. *Appleby, supra* at 307 n.5.[7]

That the judge was correct to instruct the jury on the use of deadly force in self-defense does not save this instruction. The judge instructed that "[a] person may use reasonable force to defend himself from physical attack." This lone statement is not an adequate instruction on the use of force in self-defense. These instructions were inadequate to guide the jury properly in their fact finding role. See *Commonwealth* v. *Harrington*, 379 Mass. 446, 454 (1980). Where evidence exists, from whatever source, to support a defendant's claim that he used nondeadly force in self-defense (force neither intended nor likely to cause death or great bodily harm), he is entitled to an instruction on the use of nondeadly force in self-defense. *Commonwealth* v. *Baseler*, 419 Mass. 500, 503 (1995). The absence of such an instruction here took from the jury the option to find that the Commonwealth did not prove beyond a reasonable doubt that (a) the defendant intended to shoot at the officers, or (b) his actions were likely to cause death or great bodily harm. The error created a substantial risk of a miscarriage of justice.

The Appeals Court relied primarily on *Commonwealth* v. *Yazbeck*, 31 Mass. App. Ct. 769 (1992), to determine that either reaching for or pointing a gun at another does not constitute the use of deadly force. In that case, Boston police officers broke through the front door of the defendant's home with a sledgehammer at 10:45 P.M. in order to execute a search warrant. In the house with the defendant were his mother and his girl friend, whose estranged husband had

---

[7]*Appleby* indicated that the use of a weapon dangerous per se "will qualify for § 15A convictions when used to commit an assault *and a battery* of any kind" (emphasis supplied). *Id.* at 307 n.6. In this case, the defendant committed no battery, but rather an alleged assault involving the threat of a battery. As *Appleby* noted, "the meaning of a 'dangerous weapon' depends to a certain extent on the context in which it is used." *Id.* at 305. Thus, what is a "dangerous weapon" in a case involving robbery while armed or in a case involving an assault without a battery may vary. *Id.* See note 4, *supra.*

threatened and battered her, and had also threatened to kill the defendant and the defendant's mother. As one of the officers walked down the hall, the defendant, believing that the person breaking down the door was his girl friend's estranged husband, "appeared with a loaded rifle aimed directly at the officer." *Id.* at 770. The defendant was charged with assault by means of a dangerous weapon, apparently on the theory that the officer was placed in apprehension of immediate bodily harm. There appears to have been no evidence in that case that the defendant intended to use force likely to cause death or serious bodily injury, and therefore the instruction did not create a substantial risk of a miscarriage of justice for failing to instruct on the duty to retreat. The evidence in that case supported only a theory that the defendant intended a threatening gesture. Where no evidence supported a finding that the defendant's use of force was intended or likely to cause death or serious bodily harm, no deadly force instruction was required.

Our decision today is consistent with our recent case of *Commonwealth* v. *Baseler, supra.* In that case we held that a defendant charged with assault and battery by means of a dangerous weapon and assault and battery was entitled to instructions on the use of both deadly force and nondeadly force in self-defense where the evidence was conflicting and the jury could have found either that the defendant held a gun to the victim's head after knocking her to the floor or that the victim fell against a stove as the defendant tried to prevent her from slapping him. In *Baseler, supra,* there was ample evidence of a battery, as opposed to an assault, from which the jury would have been warranted in finding that the force used by the defendant was either intended or likely to cause great bodily harm. The mere existence of a dangerous weapon, without more, would not have warranted an instruction on the use of deadly force.

The judge's instruction concerning the use of force in defense of another was necessarily flawed to the extent it referred to and relied on his earlier instructions on self-defense. For purposes of any retrial that might occur we note that, aside from the reference to the instructions on self-defense, the instructions on defense of another appeared

confusing.[8] "Self-defense is a sensitive part of the jury instruc-
tions in a criminal trial, and inappropriate language in the
instructions can readily lead to a result in which an appellate
court lacks confidence. *Commonwealth* v. *Rodriguez*, 17 Mass.
App. Ct. 547, 551 (1984)." *Commonwealth* v. *Mejia*, 407 Mass.
493, 497 (1990).

*Judgment reversed.*

*Verdict set aside.*

O'CONNOR, J. (concurring). I agree with the Appeals Court
and this court that the jury instruction on self-defense
contained error requiring reversal. Like the Appeals Court,
however, I do not agree that the jury would have been war-
ranted in finding that the defendant used deadly force. At
most, the evidence would have warranted a finding that the
defendant brandished, but did not fire, a gun; that is, he used
a gun in a threatening manner but, as the Appeals Court
observed, "did not actually use deadly force or engage in

---

[8]Since we reverse the judgment, we need only briefly comment on the
defendant's further claims of error. It is well within the discretion of a trial
judge whether to allow a jury the opportunity to view the scene of an al-
leged crime. G. L. c. 234, § 35 (1994 ed.). *Commonwealth* v. *King*, 391
Mass. 691, 694 (1984). *Commonwealth* v. *Curry*, 368 Mass. 195, 198 (1975).
There was no error in the judge's refusal here. A view would not likely
have helped the jurors. See *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 29
(1923) (purpose of view is to assist jurors in understanding evidence pre-
sented at trial). The events took place in the early morning hours when the
street was crowded with the noise and activity of patrons leaving the sev-
eral bars and restaurants in the area, a situation not amenable to replica-
tion before the jury.

The judge's denial of the defendant's motion in limine was well within
his considerable discretion. *Commonwealth* v. *Harvey*, 397 Mass. 351, 358-
359 (1986). See P.J. Liacos, Massachusetts Evidence § 4.3 (6th ed. 1994).
We are unable to determine from the record precisely what use of the am-
munition clip was made at trial, although it appears that the clip was not
entered into evidence and was only briefly referred to during the cross-
examination of the defendant. Further, the defendant has failed to identify
any prejudice that resulted from admission of the evidence. See *Com-
monwealth* v. *Woods*, 414 Mass. 343, 356, cert. denied, 510 U.S. 815 (1993).

The defendant's final claim of error, that the judge erred in failing to re-
open the case after the close of all the evidence to allow presentation of a
late-arriving defense witness, is moot.

combat." 37 Mass. App. Ct. 957, 959 (1994), quoting *Commonwealth* v. *Yazbeck*, 31 Mass. App. Ct. 769, 772 (1992).

Contrary to the Appeals Court's rationale and relying at least in part on the Model Penal Code, the court concludes that "it is proper to include within the definition of deadly force the threatening gestures of one who intends to inflict serious bodily harm or death. Where, as here, the evidence is conflicting and the jury would have been warranted in believing evidence that the defendant pointed a gun at another with or without the intent to shoot the latter, the jury must be instructed properly on the definitions of deadly force and the use of deadly force in self-defense, and the jury must determine whether the defendant's acts constituted the use of deadly force." *Ante* at 323.

As the court recognizes, by itself a defendant's pointing of a gun at another person does not constitute the use of deadly force. In the court's view, however, if, while he points the gun, the defendant plans to shoot someone, the pointing of the gun without firing it *is* the use of deadly force. I do not agree. As I see it, the defendant's pointing of a gun, regardless of what he may intend to do thereafter, cannot logically be characterized as the use of deadly force. A defendant who points a gun intending subsequently to shoot someone, intends to use deadly force but, until the shots are fired, has not done so. *Commonwealth* v. *Klein*, 372 Mass. 823 (1977), cited by the court, which involved a defendant's assertion that he shot in self-defense, does not suggest otherwise. I conclude, therefore, that, regardless of the defendant's plan when he used "threatening gestures," those gestures did not constitute the use of deadly force. It follows, of course, that the defendant's intention was irrelevant to the self-defense issue and jury consideration of that issue would have been, and on retrial will be, inappropriate.

There is an additional reason why, in this case, no question about whether the defendant intended to shoot Detective Britt should have been submitted to the jury. The court states, *ante* at 320, that the evidence was "conflicting" in regard to whether the defendant intended to shoot Britt. The court does not identify, and my review has not revealed, any evidence sufficient to warrant a finding that the defendant intended not merely to threaten Detective Britt, who was dressed in street clothes, to deter him from shooting the

defendant's friend, Hardy, but to shoot Britt. Surely, on retrial, in the absence of adequate evidence, as here, the jury should not be permitted to speculate on the defendant's intention.