**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals

## For the First Circuit

No. 02-2313

UNITED STATES OF AMERICA,
Appellant,

v.

HUMBERTO CORREIA,
Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Rya W. Zobel, U.S. District Judge

Before

Selya, Circuit Judge,
Stapleton,* Senior Circuit Judge,
and Howard, Circuit Judge.

Gregory Moffatt, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, and Denise Jefferson
Casper, Assistant United States Attorney, were on the brief, for
appellant.
Robert A. George, for appellee.

October 8, 2003

* Of the Third Circuit, sitting by designation.

**STAPLETON**, <u>Circuit Judge</u>.  Defendant/Appellee Humberto Correia was convicted of arson, three counts of mail fraud, and use of fire in the commission of a felony.  After the verdict, he moved for a new trial pursuant to Fed. R. Civ. P. 33.  At the suggestion of the district court, one of the claims advanced by Correia in support of that motion was ineffective assistance of counsel. After the Rule 33 hearing, at which Correia was represented by new counsel, the court granted a new trial on that ground.  The government now appeals. We affirm the order of the district court.

I

In September 1996, a fire broke out in Correia's photo processing plant at approximately nine o'clock in the morning.  It was quickly extinguished by the fire department. Correia submitted an insurance claim to his insurer, Travelers Insurance.  Travelers investigated the incident and paid the claim.

The district court accurately summarized the government's case at trial in the following terms:

> At trial, the government could not, and did not, present any direct evidence that defendant set fire to his photo processing laboratory on that fateful Monday morning, in downtown Taunton, Massachusetts. Rather, the case against him was crafted from a patchwork of circumstantial evidence, largely unrebutted by the defense.  According to the government, defendant arrived at his photo lab on September 30, 1996, with the intent to set fire to the building.  The government's theory was that defendant was in financial straits and the fire became his "exit strategy."

-2-

At trial, the government relied largely upon the testimony of three individuals: Vincent Calenda, a fire causation expert; Gregory Galligan, a fire investigator; and Roger Nascimento, a wiring inspector. They testified that there was no evident accidental cause and, in particular, that an electrical problem was not involved. Galligan testified that Correia told him on two occasions that he turned off the fire alarm system in his building on the morning of the fire but was unable to offer any explanation for having done so.

For the purpose of establishing the defendant's motive for the arson, the government introduced a chart into evidence detailing the defendant's debt at the time of the fire. This chart showed debts of over $270,000, without explanation. These debts apparently included approximately $208,000 in mortgages–$90,000 on his home, and $118,000 on his business–as well as an equipment loan of around $53,000 and a car loan of $6,000, though the chart did not inform the jury of these facts.

The defense argued that the government had failed to prove the elements of the crime beyond a reasonable doubt. It suggested that the fire was electrical in nature but offered no expert testimony in support of that suggestion.

The trial court found four deficiencies in counsel's performance.[1] First, counsel had no acceptable reason for failing

---

[1]Correia was in fact represented by two attorneys.

-3-

to call Manuel Franco, who would have testified that he installed the alarm system in Correia's building, that it was a burglar alarm system, and that there was no fire alarm system to be turned off. Second, counsel's argument that the fire was electrical in nature, without any proffer of expert testimony and in the face of numerous experts for the government who stated that it was definitively not electrical in nature, was counterproductive. More importantly, according to the court, counsel ignored a key piece of testimony that would have helped the defense immeasurably. Galligan testified that in 20% of the cases, the origin and cause of the fire remains forever undetermined. Because there was no direct evidence linking Correia to the fire and because the government's experts had reached their conclusion of arson by a process of eliminating all other possible causes, counsel's failure to follow up and cross-examine Galligan on the fact that fires often go unexplained, in the court's words, "fell below the standard for professionally competent assistance that is safeguarded by the Sixth Amendment." Third, the district court faulted counsel's failure to call the attorney who had conducted Travelers' investigation of the fire and who had concluded that "the cause of fire should be classified as undetermined." In the court's view, the "facts and opinions contained in [the attorney's] report potentially provided a roadmap to reasonable doubt and a list of solid defense witnesses." Finally, the district court was troubled

by counsel's failure to object to the chart of Correia's debts, which was "highly misleading," as it listed the total debt without explanation and did not include any mention of Correia's assets. In fact, much of the debt was typical of business ownership and was not evidence of a failing business. Furthermore, there was no reference to Correia's savings account of $26,000, nor to the fact that he was able to support a household of five.

The district court concluded that the failure to call Franco, by itself, as well as all four errors combined, "fell below an objective standard of reasonableness and prejudiced the defense." As a result, "a serious miscarriage of justice" had occurred and a new trial was warranted. For essentially the same reasons given by the district court, we affirm.

II

"Motions for a new trial are directed to the discretion of the trial court." United States v. Wright, 625 F.2d 1017, 1019 (1st Cir. 1980). "We will not disturb the disposition of a new trial motion unless the court abused its discretion or misapplied the law." United States v. Rothrock, 806 F.2d 318, 321-22 (1st Cir. 1986). The district court clearly applied the correct legal standard and, so, it is its discretionary judgment that we must review. See United States v. Conley, 249 F.3d 38, 44-45 (1st Cir. 2001).

"The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel at trial." United States v. Downs-Moses, 329 F.3d 253, 265 (1st Cir. 2003). "To demonstrate a violation of this right, a defendant must show that counsel's performance was constitutionally deficient and that prejudice resulted." Id. Counsel's assistance is constitutionally ineffective only when it falls "below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984). Moreover, counsel's deficiency "must have resulted in prejudice, defined as a 'reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different.'" Epsom v. Hall, 330 F.3d 49, 53 (1st Cir. 2003) (quoting Strickland, 466 U.S. at 694).

We hold that there was no abuse of discretion in the finding that the errors identified by the district court rendered the assistance received by Correia constitutionally ineffective. Defense counsel's failure to call Franco, who was in the best position to know whether the defendant had a fire alarm and would have testified that no such alarm existed for the defendant to have turned off, is mystifying. Galligan's testimony that Correia had admitted turning off the fire alarm on the morning of the fire was by far the most damning evidence the government had to offer. Defense counsel had a full and convincing response from a neutral witness and failed to play this trump card. Moreover, given the

-6-

absence of direct evidence of arson and the fact that the government's experts were accordingly compelled to attempt to prove the government's case by eliminating other causes, the frequency of cases of undetermined cause was an obvious theme to have stressed.

With respect to prejudice, given the entirely circumstantial nature of the government's case and the seriousness of the failings of defense counsel, the district court did not abuse its discretion in finding a "reasonable probability that, but for counsels' unprofessional errors, the result . . . would have been different."

III

The order of the district court granting a new trial is <u>affirmed.</u>