William ZAMBRANA–SIERRA,
Petitioner,

v.

UNITED STATES of America,
Respondent.

Civil No. 3:15–CV–01844 (JAF)

United States District Court,
D. Puerto Rico.

Signed April 7, 2016

Miguel Oppenheimer, Oppenheimer Rios & Assoc., Carolina, PR, for Petitioner.

Nelson J. Perez–Sosa, Jose A. Contreras, U.S. Attorney's Office, San Juan, PR, for Respondent.

## *OPINION AND ORDER*

### JOSE ANTONIO FUSTE, UNITED STATES DISTRICT JUDGE

On May 19, 2014, petitioner William Zambrana–Sierra (Zambrana) was convicted, by guilty plea, of aiding and abetting interference with commerce by robbery, in violation of 18 U.S.C. §§ 2 and 1951(a), and sentenced to seventy months in prison, to be served consecutively to the prison term imposed under docket number 3:11–cr–00495–CCC–1, followed by three years of supervised release, due to his role in a conspiracy that resulted in the gunpoint robbery of a Kmart in Guaynabo, Puerto Rico, on December 31, 2010. On or about June 2, 2015, Zambrana, who is still incarcerated pursuant to the judgment, appears to have filed a timely pro-se petition for writ of habeas corpus under 28 U.S.C. § 2255, alleging that his sentence violates his due-process rights and that his trial attorney, Joseph Boucher–Martínez (Boucher), rendered him ineffective assistance.[1] (ECF No. 1–1 at 2–6.) The United States opposes the petition. (ECF No. 5.) On April 4, 2016, we held an evidentiary hearing 2 on the allegations in the petition.

 "We are required to construe liberally a pro se [petition]," but "pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir.1997). Ineffective-assistance claims are governed by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), under which Zambrana must prove two elements. " 'First, [he] must show that counsel's performance was deficient,' which requires showing that counsel's performance was not only substandard, but also 'deficient in some way sufficiently substantial to deny him effective representation.' " *Logan v. Gelb*, 790 F.3d 65, 71 (1st Cir.2015) (*quoting Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; then *quoting Epsom v. Hall*, 330 F.3d 49, 53 (1st Cir.2003)). " 'Second, [he] must show that the deficient performance prejudiced the defense,' which requires proof that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (*quoting Strickland*, 466 U.S. at 687, 694, 104 S.Ct. 2052).

 "A defendant is normally bound by the representations that he himself makes in open court at the time of his plea." *United States v. Gates*, 709 F.3d 58, 69 (1st Cir.2013) (*citing United States v. Butt*, 731 F.2d 75, 80 (1st Cir.1984)). "[S]uch statements 'are more likely to be reliable than later versions prompted by second thoughts.' " *Id.* at 70 (quoting *United States v. Padilla–Galarza*, 351 F.3d 594, 598 (1st Cir.2003)). "[T]he presumption of truthfulness of the Rule 11 statements will not be overcome unless the allegations in the § 2255 motion … include credible, valid reasons why a depar-

---

1. Zambrana declares, under penalty of perjury, that he deposited his habeas petition in his prison's internal mailing system on June 2, 2015. (ECF Nos. 1 at 12.) The declaration complies with 28 U.S.C. § 1746(2). But, Zambrana does not declare that he prepaid first-class postage for the petition. Thus, he has not fully complied with the inmate-filing rule in Rule 3(d) of the Rules Governing Section 2255 Cases in the United States District Courts. Even if he had, the filing was timely only if the judgment of conviction became

final upon the expiration of the 14–day period to file a notice of appeal under Rule 4(b)(1)(A) of the Federal Rules of Appellate Procedure. *See Brooks v. United States*, No. 13–cv–00388, 2013 U.S. Dist. LEXIS 171667, at *5–6 (D.Me. Nov. 5, 2013) (finding that "the First Circuit apparently has not yet decided the issue of when an unappealed judgment is final," and noting a circuit split on the issue). We will assume the timeliness of Zambrana's petition because we can easily dispose of it on the merits.

ture from those earlier contradictory statements is now justified." *Butt,* 731 F.2d at 80 (*citing Crawford v. United States,* 519 F.2d 347, 350 (4th Cir.1975)). In the absence of such reasons, newfangled "allegations need not be accepted as true because they ... contradict the record, or are inherently incredible." *DeCologero v. United States,* 802 F.3d 155, 167 (1st Cir.2015) (*quoting Owens v. United States,* 483 F.3d 48, 57 (1st Cir.2007)). The court finds that Zambrana's petition does not contain any reasons of this kind.

■ Most of Zambrana's claims derive from the proposition that his prison sentence should have been imposed to run concurrently, instead of consecutively, with the one on his 18 U.S.C. § 924(c)(1)(A)(I) conviction, under docket number 3:11–cr–00495–CCC–1, because, in his plea agreement, the parties had agreed to "recommend that the sentence imposed in the instant case run concurrently with the sentence imposed in" the other case. (3:13–cr–00694–JAF–9, ECF No. 166 at 4.) There are two problems with these claims.

■ First, "a § 924(c) sentence cannot be imposed to run concurrently with any other sentence." *United States v. Rivera–Gonzalez,* 809 F.3d 706, 709 (1st Cir.2016) (*citing United States v. Gonzales,* 520 U.S. 1, 11, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997)). In fact, § 924(c), itself, mandates that "no term of imprisonment imposed on a person under [§ 924(c)] shall run concurrently with any other term of imprisonment imposed on the person." *United States v. Garcia–Ortiz,* 792 F.3d 184, 193 (1st Cir.2015) (*quoting* 18 U.S.C. § 924(c)(1)(D)(ii)). Thus, as a matter of law, Zambrana cannot obtain his desideratum of a concurrent sentence.

Second, the record shows that, even before pleading guilty, Zambrana knew that the plea agreement's recommendation of a concurrent sentence was invalid, that he

was going to be sentenced to a consecutive term of imprisonment, and that he still wanted to plead guilty under the agreement. At the evidentiary hearing, Boucher, Zambrana's trial attorney, testified that, well before the Rule 11 plea colloquy, he realized the agreement's recommendation of a concurrent sentence was contrary to law and that he discussed his realization with the prosecutor, who agreed with him. Boucher testified further that he had more than three pre-plea discussions with Zambrana, in which he explained why the sentence in this case "had to run consecutively" to the one on the § 924(c) conviction, and that Zambrana "absolutely" still wanted to plead guilty under the remaining terms of the plea agreement. Based on his truthful demeanor and consistent account of the underlying facts, we credit Boucher's testimony as a whole.

Moreover, a conversation that we had with Zambrana at sentencing corroborates Boucher's account. The prosecutor initiated the conversation by informing us that the plea agreement had "inadvertently" included a recommendation of a concurrent sentence when, "[p]ursuant to 924(c)(1)(D)(ii), this sentence must run consecutive to [Zambrana's] 924(c) conviction." (3:13–cr–00694–JAF–9, ECF No. 330 at 6.) We agreed that the new sentence must be consecutive because "obviously that's the law." (*Id.*) The prosecutor then stated that he understood that, although Zambrana "knows this fact," it "in no way changes [Zambrana's] desire to plead guilty in this case ... and proceed to sentencing." (*Id.* at 7.) We then questioned Zambrana. He confirmed that he knew that "there was a recommendation [that] the sentence imposed in this case be concurrent with the sentence imposed in the other case." (*Id.*) He confirmed further that he "knew ... that that was simply a recommendation." (*Id.*) He then af-

firmed that he knew that his sentences "must run consecutive and not concurrent." (Id.) And, despite that knowledge, he affirmed that he still wanted to "validate" his decision to plead guilty. (Id.) At the evidentiary hearing on the petition, Zambrana acknowledged that this conversation had presented him with an opportunity to withdraw his guilty plea and that he had declined to do so, even though he knew that the recommendation of a concurrent sentence could not be followed. Thus, Zambrana knew that the sentencing recommendation in the agreement was invalid, knew that the law forbade a concurrent sentence under the circumstances, knew that he had to be sentenced a consecutive term of imprisonment, and yet still chose to plead guilty.

The claims in the petition are disingenuous. The plea agreement itself belies the assertion that it "promised" Zambrana a concurrent sentence. (ECF Nos. 1 at 4, 6; 1–1 at 6–7.) In the agreement, Zambrana affirmed that he knew "that his sentence is within the sound discretion of the sentencing judge," "that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense," "that the court may accept or reject the Plea Agreement," and that "[s]hould the Court impose a sentence up to the maximum established by statute, [he] cannot, for that reason alone, withdraw the guilty plea." (3:13–cr–00694–JAF–9, ECF No. 166 at 2–3.) Zambrana also averred that Boucher had "translated the Plea Agreement and explained it to [him] in the Spanish language," that he had "read this Plea Agreement and carefully reviewed every part of it with [Boucher]," that he had "no doubts as to the contents of the agreement," and that he "fully underst[oo]d this agreement" and "voluntarily agree[d] to it." (Id. at 8.) Further, Zambrana and Boucher signed the agreement and initialed each page.

Most important of all is the wording of the parties' agreement as to Zambrana's sentence, which was that they would "recommend that . . . [it] run concurrently." (Id. at 4.) At the hearing on the petition, Zambrana confirmed that Boucher had explained the agreement to him "word for word" and that he understood "every word" of it before pleading guilty.

The record contradicts and renders incredible the factual allegations underlying all of Zambrana's complaints about his sentence to a consecutive term of imprisonment in the underlying matter. Accordingly, we must deny him relief under the first and third grounds of the petition because his sentence was neither improper, nor unconstitutional, on account of being consecutive, instead of concurrent. It follows that Boucher did not render Zambrana ineffective assistance for not objecting to a consecutive prison term. After all, a concurrent term would have been illegal. And, when given the opportunity to withdraw his plea, Zambrana, himself, admits that he declined it. Even now, Zambrana does not ask for his plea back; instead, he asks to "have his sentence changed from consecutive to concurrent," which, of course, is not possible. (ECF No. 1–1 at 8.) Accordingly, we must also deny him relief under the fourth ground of the petition.

■ This leaves us with only the petition's second ground of relief. In it, Zambrana alleges that Boucher was ineffective because he "failed" to file a notice of appeal "even after" Zambrana had "sen[t] a letter to him," asking him to file it. (ECF No. 1–1 at 5.) At the hearing, Zambrana clarified that he had sent Boucher only one letter, that the letter was the only time that he ever asked Boucher to appeal the judgment of conviction, and that he sent Boucher the letter only a few days after

sentencing. Based on his largely mendacious demeanor and inconsistent testimony, we decline to credit Zambrana's self-serving narrative, save for the admissions against his interest.

Zambrana claimed that he sent Boucher a letter, asking that an appeal be filed. Boucher testified that he did not receive any such letter, but he did produce, from his files, another letter that Zambrana had sent him, thereby showing that he kept track of his correspondence with the petitioner. Zambrana claimed that he had kept a hand-written copy of the letter and that the copy was back in his prison cell. When the prosecutor led Zambrana to believe that producing the copy would prove his allegations about sending the original, Zambrana took back his earlier testimony and claimed that the copy went missing months ago. Zambrana then claimed that he had appended a copy of the copy to the petition, up until he was shown the petition and had to admit that he had not done so.

Zambrana claimed that he wrote the letter because, incredibly, neither his mother, nor his sister, was able to get in touch with Boucher to request the filing of an appeal. Boucher then testified that Zambrana's sister had contacted him post-sentencing, but that her only concern was with where her brother was going to be imprisoned and whether the government was still investigating him. Most damaging of all to Zambrana's claims was Boucher's testimony, which we credit, that immediately after the sentencing, Boucher spoke with Zambrana and asked him whether he was okay with a consecutive sentence and whether he wanted to appeal. Boucher testified that Zambrana had said that he was at peace with his sentence and did not want to file an appeal. Thus, we find that Boucher was not ineffective for not appealing Zambrana's judgment of conviction for the simple reason that Zam-

brana never asked him to file an appeal, but had instead told him not to file one. To be clear, we find that Zambrana did not write a letter asking that an appeal be filed. Accordingly, we also deny Zambrana relief under the petition's second ground.

■ Finally, we do not see any problem with Zambrana's waiver of appeal under the plea agreement. Although Zambrana finds error there (*see* ECF No. 1–1 at 6), the record shows that the waiver was knowing, intelligent, and voluntary. Indeed, at the hearing on the petition, Zambrana admitted that he had understood the terms of the waiver and had discussed them with Boucher before pleading guilty. In any event, we find that the waiver is not in effect because Zambrana's consecutive sentence is not "in accordance with the terms and conditions set forth in the Sentence Recommendation provisions" of the plea agreement. (3:13–cr–00694–JAF–9, ECF No. 166 at 5.)

In sum, we hereby **DENY** the petition for writ of habeas corpus under 28 U.S.C. § 2255. (ECF No. 1.) Although, for decades, "floods of stale, frivolous and repetitious petitions [have] inundate[d] the docket of the lower courts," we continue to search for "the occasional meritorious application ... buried in a flood of worthless ones." *Brown v. Allen*, 344 U.S. 443, 536–37, 73 S.Ct. 397, 97 L.Ed. 469 (1953). This was not one of them. When entering a final order adverse to a petitioner under 28 U.S.C. § 2255, we must determine whether the petitioner merits a certificate of appealability. Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts. We may issue a certificate only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Jennings v. Stephens*, ——— U.S. ———, 135 S.Ct. 793, 802, 190 L.Ed.2d 662 (2015). No such

showing has been made here. Thus, we will not grant Zambrana a certificate. He may still seek one directly from the First Circuit Court of Appeals under Federal Rule of Appellate Procedure 22(b)(1).

**IT IS SO ORDERED.**